**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA**

> ELECTRONICALLY
> FILED
> May 10 2024
> U.S. DISTRICT COURT
> Northern District of WV

**THE ESTATE OF R. SHANE ADAMS,
JEREMY POPE,
G.T.P, (minor child, by their Next of Friend, Jeremy Pope),
and
A.M.P, (minor child, by their Next of Friend, Jeremy Pope),**
                    Plaintiffs,

**v.**                                          CIVIL ACTION NO: _____
                                                                        1:24-CV-52
                                                **Judge:** _____
                                                            Kleeh

**ZENITH ENERGY TERMINALS HOLDINGS, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY LOGISTICS, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY GROUP, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY LOGISTICS GP, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY LOGISTICS PARTNERS LP,**
a Delaware Limited Partnership Company;
**ZENITH ENERGY MANAGEMENT, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY MANAGEMENT U.S. GP, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY MANAGEMENT U.S., LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY NETWORK, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY PARTNERS, INC.,**
a Delaware Corporation;
**ZENITH ENERGY U.S. GP, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY U.S. HOLDINGS, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY U.S. LOGISTICS HOLDINGS, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY U.S. LOGISTICS HOLDINGS II, LLC,**
a Delaware Limited Liability Company;
**ZENITH ENERGY U.S. LOGISTICS, LLC,**

a Delaware Limited Liability Company;
**ZENITH ENERGY U.S., LP,**
a Delaware Limited Partnership Company;
**JOHN DOE TUGBOAT OWNER;** and
**JOHN DOE TUGBOAT OPERATORS 1-10,**

Defendants.

**<u>COMPLAINT</u>**

  **COMES NOW** the Plaintiffs, the Estate of R. Shane Adams, through Sharon Dowdy and Kacy Umina in their capacities as Co-Administratrix, and Jeremy Pope, G.T.P. and A.M.P. by next of friend, Jeremy Pope, by and through counsel, Jim Leach, LC,  Ryan J. Umina, Beth L. Umina, and the law firm of Umina Legal, PLLC, and J. Morgan Leach and Rob Williamson and the law firm of J. Morgan Leach, PLLC, and for their Complaint against the above-named Defendants, do state and allege the following:

**INTRODUCTION**

  The Edith Barill Riverfront Park in Star City, West Virginia the ("Park") is a popular destination for Star City locals, as well as visitors to the area. The Park is home to a large playground, a boat ramp, several docks, and trails for hiking or biking. There is a sign near the entrance to the Park, which reads "This is a multi-use river area. Please slow your boat to avoid accidents with non-motorized vessels, *swimmers*, the WVU Rowing Team, and the Monongahela Rowing Association" (emphasis added). The Park is intended to be used for swimming, fishing, kayaking, and various other recreational activities.

  On May 13, 2022, Mr. R. Shane Adams ("Mr. Adams") was enjoying a beautiful Spring day at the Park with his family. Specifically, they were piloting remote controlled ("RC") boats on the Monongahela River. The family gathered at the picnic tables close to the river, as pictured below. At the same time, a vessel was mooring at a refueling station or storage terminal under power and

2

located near the picnic tables (the "Zenith Terminal"). Upon information and belief, this refueling station or storage terminal was owned, operated, and maintained by Zenith Energy Terminals Holdings, LLC, Zenith Energy Logistics, LLC, or another one of the many Zenith Defendants named in this Complaint. On Zenith's website, there is a page entitled "Our Values" claiming that it is "constantly investing in new ways to ensure . . . safety of our employees and communities." It purports to take a "Safety First" approach, boasting that it is "committed to keeping the environment, [its] neighbors, and teams safe across [its] operations." Zenith further claims "to invest in infrastructure modernization to ensure [its] terminals are equipped with best-in-class safety equipment and conduct regular trainings that protect [its] employees, contractors, and the communities where [it] operate[s]." It "is recognized within the industry as a model for safe operations" and its "goal is zero incidents, period." According to family members and other witnesses, there were two to three employees stationed on top of the tugboat, working, at all times relevant herein.

As Mr. Adams and his family members were piloting the RC boats, one of the boats stopped responding to its remote. After unsuccessfully attempting to recall it with the remote controller, Mr. Adams, both physically fit and an experienced swimmer, decided to swim to recover the boat. Based on video evidence, Mr. Adams unexpectedly struggles to stay above the water and turns back to shore. On his return swim, he appears to be pulled towards the stationary tugboat at the Zenith Terminal and was struggling to keep himself from going under the boat. He attempted to grab the side of the vessel before being drug underneath it. Unbeknownst to Mr. Adams, the tugboat was creating a deadly current for which no warnings existed. Eyewitnesses in this case will testify that Mr. Adams begged for help as the current from the tugboat continued to pull him underneath the vessel. One witness in particular recalls screaming to the employees standing on top of the

3

tugboat to help Mr. Adams by throwing him a life preserver, but the employees refused to act. Mr. Adams' family and other onlookers watched in horror as Mr. Adams disappeared under the barge. When he did not resurface, emergency services were contacted. Ultimately, Mr. Adams' body was recovered approximately eight hours later with the assistance of a sonar device. His body was buried under at least five (5) feet of mud by the force from the tugboat.

As evidenced by the pictures included below, there was not a single warning sign regarding the dangers created by a tugboat attached to the Zenith Terminal. Due to the failure of the Defendants named herein to post "no swimming" signs, warnings, or anything which would discourage an individual from entering the water in this area of the park, Mr. Adams was simply unaware of any present danger associated with swimming out to recover his RC boat. It was reasonable for Mr. Adams to believe that he could swim out into the river while at a park where swimming, fishing, and recreation were permitted.

At all times relevant herein, the Zenith Defendants knew of the danger to swimmers caused by its refueling station and a large vessel being present in the water at a public riverfront park. Specifically, refueling barges, although stationary, are known by those in the industry to create a deadly current or undertow. Zenith has and had a duty to warn those near its terminals—especially when the terminal abuts a multi-use riverfront park. No such warning signs are or were placed in the area near the barge refueling stations where Mr. Adams was killed. Mr. Adams' death was easily preventable had Zenith properly warned of the dangers caused by the operations of its refueling station.

PARTIES, JURISDICTION, AND VENUE

1.    The Plaintiff, the Estate of R. Shane Adams, through Sharon Dowdy and Kacy Umina in their capacities as Co-Administratrix, is an estate in the State of Pennsylvania.

2.    The Plaintiff, Jeremy Pope, is the cousin of the decedent and was present to witness Mr. Adams death.

3.    The Plaintiff, G.T.P is the minor child of Jeremy Pope and was present and witnessed Mr. Adams' death.

4.    The Plaintiff, A.M.P. is the minor child of Jeremy Pope and was present and witnessed Mr. Adams' death.

5.    Defendant Zenith Energy Terminals Holdings, LLC is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, that operates as a foreign Limited Liability Company in West Virginia, listing Zenith Energy Logistics, LLC as its officer, having a principal address at 3900 Essex Lane, Suite 700, Houston, TX 77027, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

6.    Defendant Zenith Energy Logistics, LLC, is a domestic Delaware Limited Liability Company that is listed as the primary officer for the Defendant Zenith Energy Terminals Holdings, LLC in West Virginia, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

7.    Defendant Zenith Energy Group, LLC, is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Trust Company, having a principal address as The Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, and upon information and

belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

8.     Defendant Zenith Energy, LLC is a domestic Delaware Limited Liability Company listing its registered agent as Delaware Business Incorporators, Inc., having a principal address at 3422 Old Capitol TRL, Ste. 700, Wilmington, DE 19808, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

9.     Defendant Zenith Energy Logistics GP, LLC, is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

10.     Defendant Zenith Energy Logistics Partners, LP, is a domestic Delaware Limited Partnership listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

11.     Defendant Zenith Energy Management, LLC, is a domestic Delaware Limited Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

6

12.     Defendant Zenith Energy Management U.S. GP, LLC, is a domestic Delaware Limited Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

13.     Defendant Zenith Energy Management U.S., LLC, is a domestic Delaware Limited Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St, Wilmington, DE 19801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

14.     Defendant Zenith Energy Network, LLC, is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Service Company, having a principal address at 251 Little Falls Dr., Wilmington, DE 19808, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

15.     Defendant Zenith Energy Partners, Inc., is a domestic Delaware Corporation listing its registered agent as Delaware Business Incorporators, Inc., having a principal address at 3422 Old Capitol TRL Ste. 700, Wilmington, DE 19808, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

16.     Defendant Zenith Energy U.S. GP, LLC, is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 12801, and upon information and

belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

17.     Defendant Zenith Energy U.S. Holdings, LLC, is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 12801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

18.     Defendant Zenith Energy U.S. Logistics Holdings, LLC, is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 12801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

19.     Defendant Zenith Energy U.S. Logistics Holdings II, LLC, is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 12801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

20.     Defendant Zenith Energy U.S. Logistics, LLC, is a domestic Delaware Limited Liability Company listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 12801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

21.     Defendant Zenith Energy U.S., L.P., is a domestic Delaware Limited Partnership listing its registered agent as The Corporation Trust Company, having a principal address at The Corporation Trust Center, 1209 Orange St., Wilmington, DE 12801, and upon information and belief, at all times relevant herein, was responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

22.     The Defendants enumerated in paragraphs 5-21 are collectively referred to as the "Zenith Defendants" and upon information and belief, were individually and jointly responsible for owning, operating, and maintaining the Zenith Terminal located in Star City, WV.

23.     Defendant John Doe Tugboat Owner is the owner of the tugboat that caused Mr. Adams' untimely drowning, which was mooring at the Zenith Terminal at the time of Mr. Adams' death.

24.     Defendant John Doe Tugboat Operators 1-10 were owners, employees, or other agents of Zenith or Defendant John Doe Tugboat Owner who failed to provide Mr. Adams with assistance as he was drowned.

25.     Venue is proper because all of the events giving rise to this action occurred in Monongalia County, West Virginia.

26.     This Honorable Court has diversity jurisdiction over this matter and the amount in controversy exceeds the jurisdictional minimum, as required under 28 U.S.C. § 1332.

FACTS

27.     The Plaintiff incorporates by reference paragraphs 1-26 above, as if fully set forth herein.

28.     On or about May 13, 2022, Mr. Adams went to the Park with several members of his family, including Plaintiffs Jeremy Pope, and his young children, G.T.P. and A.M.P.

29.     Upon their arrival, Mr. Adams and his family gathered at the picnic tables close to the Monongahela River, as depicted below:



30.     From there, Mr. Adams and his family members, including Plaintiffs Jeremy Pope, G.T.P. and A.M.P, began to pilot RC boats on the Monongahela River.

31.     The Monongahela River is intended to be used and accessed by Park visitors.

32.     At all times relevant herein, a river tugboat (hereinafter "Tugboat") was present and stationary, but still under operation at the nearby refueling station.

33.     Upon information and belief, and at all times relevant, the refueling station or storage terminal was and is owned and operated by the Zenith Defendants.

34.     The refueling station is located in close proximity to picnic tables found within the Park and is within the area intended for swimming and recreation.

35.     The Defendant John Doe Tugboat Operators 1-10 were on top of the barge working at all times relevant to this Complaint.

36.     While Mr. Adams and his family, including Plaintiffs Jeremy Pope, G.T.P. and A.M.P, continued to operate their RC boats, one such boat stopped responding to its remote and began to drift.

37.     Mr. Adams attempted to recall the boat using the remote controller.

38.     When the RC boat would not return, Mr. Adams decided he could swim out to recover the RC boat.

39.     Absent from the Park, and in particular the area occupied by Mr. Adams and his family, are any signs indicating that swimming is not permitted, nor warnings of any kind as to the dangers one may encounter should someone enter the water at that location in the Park.

40.     No such restriction or warning signs were present anywhere at the Park to warn visitors of the hazard that a mooring vessel at the Zenith Terminal creates to swimmers.

41.     In fact, the only sign in that area is regarding the dangers present due to a petroleum pipeline, as depicted below:

11



42.     In fact, Mr. Adams and his family were previously told by other Park guests that people swim in the river at that location often and that there were no rules or regulations against it.

43.     A sign near the entrance of the Park reads: "This is a multi use river area. Please slow your boat to avoid accidents with non-motorized vessels, *swimmers,* the WVU Rowing Team, and the Monongahela Rowing Association." (emphasis added).

44.     The Park is intended to be used by guests for swimming, fishing, kayaking, and many other recreational activities.

45.     The Park is *actually* used by guests for swimming, fishing, kayaking, and many other recreational activities.

46.     As there were no warning signs present and swimming was permitted, even encouraged, Mr. Adams went into the river to recover the RC boat.

47.     Mr. Adams was both physically fit and an experienced swimmer.

48.      Upon reaching the RC boat, Mr. Adams turned to come back to the shore.

49.      While making his return swim, witnesses watched as Mr. Adams began to be pulled toward the stationary tugboat and saw that he grabbed onto it in an attempt to prevent being pulled under.

50.      Three such witnesses include Plaintiffs Jeremy Pope and his two young children, G.T.P and A.M.P, all of which were relatives of Mr. Adams

51.      At this time, Mr. Adams' movements became frantic, as the current from the Tugboat began to pull him underneath it.

52.      Mr. Adams began to cry out and plead for help from the John Doe Tugboat Operators 1-10.

53.      At all time relevant herein, the John Doe Tugboat Operators 1-10 owed Mr. Adams a duty to aid and/or rescue him from the hazard they created.

54.      Witnesses also screamed to the John Doe Tugboat Operators 1-10 to help Mr. Adams by throwing him a life preserver.

55.      Rather than provide any assistance to Mr. Adams, the John Doe Tugboat Operators 1-10 made a conscious decision to not offer aid and went back inside the interior of the tugboat.

56.      The tugboat then sucked Mr. Adams all the way underneath it, where he disappeared and drowned.

57.      With the assistance of a sonar device, Mr. Adams' body was recovered near the edge of the Tugboat just after 1:00 am the following morning.

58.      The current from the barge had sucked Mr. Adams under the water, burying him at least five (5) feet of mud.

59.      At all times relevant, the Zenith Defendants knew or should have known of the dangers caused to swimmers by its refueling station.

13

60.     Specifically, refueling tugboats, although stationary, are known by those in the industry to create a deadly current and undertow.

61.     A lay person would not be aware of the dangers associated with the refueling station and any risks they may be subject to should they enter the water, without proper warnings.

62.     At all times relevant herein, the Zenith Defendants had a duty to warn Park visitors of the dangers associated with and caused by its refueling station.

63.     No such warning signs are placed in the area near the Tugboat refueling station where Mr. Adams was drowned, or anywhere else in the Park.

64.     At all times relevant herein, Zenith Defendants, through its operations described herein and throughout, created a hazard to all swimmers from the Park and therefore owed a duty to warn the patrons of the Park, including Mr. Adams.

65.     At all times relevant herein, Zenith Defendants and/or the Defendant John Doe Tugboat Owner and John Doe Tugboat Operators 1-10, through their operations described herein and throughout, created a hazard to all swimmers from the Park and therefore owed a duty to render aid to said swimmers, including Mr. Adams.

66.     Mr. Adams' death was caused by the Zenith Defendants and/or the Defendant John Doe Tugboat Owner and John Doe Tugboat Operators 1-10 failure to warn Park visitors of the dangers associated with and caused by the refueling station and failure to render aid upon becoming aware of Mr. Adams dire situation upon becoming trapped in the under current that caused his drowning and death.

## COUNT I - WRONGFUL DEATH - W. VA. CODE § 55-7-6
### ALL DEFENDANTS

67.     The Plaintiff incorporates by reference paragraphs 1-66 above, as if fully set forth herein.

68.     At all times relevant herein, the Defendants owed a duty to Mr. Adams to make him aware of the dangers associated with and caused by swimming in the Monongahela River while a tugboat is refueling at the Zenith Terminal, given its location.

69.     At all times relevant herein, the Defendants, collectively, created a hazard for all Park visitors by allowing the Tugboat to operate and/or operating the Tugboat while using the fueling station which created the deadly undertow.

70.     The Defendants had a duty to warn all patrons of the Park of such hazards they collectively created.

71.     Such hazards were foreseeable by the Defendants, who were or should have been aware of the undertow created by the Tugboat while in operation at the refueling station.

72.     At all times relevant herein, the Defendants, collectively, breached their duty in failing to warn Park visitors of the dangers created by the Defendants, or alternatively, in failing to instruct Park visitors to take certain precautions when a tugboat is refueling.

73.     As a direct and proximate result of the misconduct described herein, the Defendants are responsible for Mr. Adams' wrongful death.

74.     Sharon Dowdy and Kacy Umina bring this suit on behalf of the deceased, R. Shane Adams, in their capacities as duly appointed Co-Administratrix, is an estate in the State of Pennsylvania.

75.     As a direct and proximate result of Mr. Adams' wrongful death, the Estate of R. Shane Adams and family members are entitled to damages pursuant to West Virginia's Wrongful Death Statute, W. Va. Code § 55-7-6, which shall include: (A) sorrow, mental anguish, solace, society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and

assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

## COUNT II - NEGLIGENCE
### ALL DEFENDANTS

76.     The Plaintiff incorporates by reference paragraphs 1-75 above, as if fully set forth herein.

77.     At all times relevant herein, the Defendants had a duty to ensure that Park visitors at the Edith Barill Park in Star City, WV, knew of the dangers associated with and caused by swimming in the Monongahela River while a tugboat is refueling at the Zenith Terminal, given its location.

78.      At all times relevant herein, the Defendants, collectively, created a hazard for all Park visitors by allowing the Tugboat to operate and/or operating the Tugboat while using the fueling station which created the deadly undertow.

79.     The Defendants had a duty to warn all patrons of the Park of such hazards they collectively created.

80.     Such hazards were foreseeable by the Defendants, who were or should have been aware of the undertow created by the Tugboat while in operation at the refueling station.

81.     At all times relevant herein, the Defendants, collectively, breached their duty in failing to warn Park visitors of the dangers created by the Defendants dangers, or alternatively, in failing to instruct Park visitors to take certain precautions when a tugboat is refueling.

82.     At all times relevant herein, the Defendants, collectively, acted negligently, grossly negligently, carelessly, and/or recklessly by failing to warn Park visitors at the Edith Barill Park in Star City, WV of the dangers associated with and caused by the Zenith Terminal and its customers.

83.     As a direct and proximate result of the Defendants' negligence, gross negligence,

carelessness, and/or recklessness, Mr. Adams was not aware of the danger presented by the Defendants' misconduct, and in turn, caused Mr. Adams to lose his life and his family to suffer the damages as alleged herein.

## COUNT III - NEGLIGENCE
### DEFENDANTS JOHN DOE TUGBOAT OWNER AND JOHN DOE TUGBOAT OPERATORS 1-10

84.     The Plaintiff incorporates by reference paragraphs 1-83 above, as if fully set forth herein.

85.     At all times relevant herein, Defendant John Doe Tugboat Owner and Operators 1-10 had a duty to attempt a rescue of a man overboard in the Monongahela River, struggling to swim due to the hazardous undertow current created by the Tugboat they were operating at the refueling station.

86.     Such hazards were foreseeable by the Defendants, who were or should have been aware of the undertow created by the Tugboat while in operation.

87.     The Defendants breached their duty by failing to attempt a rescue of any sort, Defendant John Doe Tugboat Owner and Operators 1-10.

88.     The Defendants acted negligently, grossly negligent, carelessly, and/or recklessly in refusing to render aid, as described herein.

89.     As a direct and proximate result of Defendant John Doe Tugboat Owner and Operators 1-10 negligence, gross negligence, carelessness, and/or recklessness, Defendants caused Mr. Adams to lose his life and his family to suffer the damages as alleged herein.

## COUNT IV - Respondeat Superior
### Defendant John Doe Tugboat Owner

90.     The Plaintiff incorporates by reference paragraphs 1-89 above, as if fully set forth herein.

91.     Because of the special relationship that exists, *respondeat superior* imputes vicarious liability to an employer based on an employee's fault.

17

92.     An employer is liable for the conduct of its employees, even if the specific conduct is unauthorized or contrary to express orders, so long as the employee is acting within its general authority for his job description and for the benefit of the employer.

93.     Conduct found to be for the benefit of its master is held to be within the scope of employment.

94.     A servant may be within his scope of employment if his actions occur within the authorized time and space of the employment.

95.     At all time herein, John Doe Tugboat Operators 1-10 were working on the clock as an employee of Defendant John Doe Tugboat Owner.

96.     At all times relevant herein, the John Doe Tugboat Operators 1-10 were acting within their scope of employment and to the benefit of their employer.

97.     Defendant John Doe Tugboat Owner is aware that, in carrying out their duties while working on a tugboat, its employees may be required to render aid to an individual who is overboard.

98.     Defendant John Doe Tugboat Operators 1-10 owe a duty to render care to anyone overboard threatened by the dangers created by their tugboat.

99.     Defendant John Doe Tugboat Owner is vicariously liable for the actions or inactions of its employees, Defendant John Doe Tugboat Operators 1-10, as alleged herein and throughout.

### COUNT V - NEGLIGENT HIRING, TRAINING & SUPERVISION
### JOHN DOE TUGBOAT OWNER

100.    The Plaintiff incorporates by reference paragraphs 1-99 above, as if fully set forth herein.

101.    At all times relevant herein, Defendant John Doe Tugboat Owner had a duty to adequately hire, train, staff, and supervisor competent tugboat operators.

18

102.    At all times relevant herein, Defendant John Doe Tugboat Operators 1-10 acted negligently, grossly negligent, carelessly, and/or recklessly by failing to adequately hire, train, staff, or supervise competent tugboat operators.

103.    As a direct and proximate result of Defendant John Doe Tugboat Owner's negligence, gross negligence, carelessness, and/or recklessness as alleged herein and throughout, Defendant caused Mr. Adams to lose his life and his family to suffer the damages as alleged herein.

### COUNT V - NEGLIGENCE
### THE ZENITH DEFENDANTS

104.    The Plaintiff incorporates by reference paragraphs 1-103 above, as if fully set forth herein.

105.    At all times relevant herein, the Zenith Defendants had a duty to perform safety inspections of the Zenith Terminal and the area surrounding it in the Park for the benefit of the community and those using the Park abutting the business.

106.    At all times relevant herein, Zenith Defendants owed Mr. Adams a duty to adequately warn of the dangers associated with and caused by a tugboat in operation while refueling at a Zenith fueling terminal.

107.    Such hazards were foreseeable by the Defendants, who were or should have been aware of the undertow created by the Tugboat while in operation.

108.    At all times relevant herein, the Zenith Defendants acted negligently, grossly negligent, carelessly, and/or recklessly by failing to adequately perform safety inspections of the Zenith Terminal and the area surrounding it in Star City, WV, which would have altered them to the lack of any warning signs to the public of the hazard that their terminal created.

109.    As a direct and proximate result of the Zenith Defendants' negligence, gross negligence, carelessness, and/or recklessness, Mr. Adams died.

### COUNT VI - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### ALL DEFENDANTS

110.    The Plaintiff incorporates by reference paragraphs 1-109 above, as if fully set forth herein.

111.    At all time relevant herein, Plaintiffs Jeremy Pope, G.T.P., and A.M.P. were close relatives of Mr. Adams and witnessed his tragic death as described herein.

112.    At all times relevant herein, the Defendants acted negligently, grossly negligent, carelessly, and/or recklessly.

113.    At all times relevant hereto, the acts and omissions of Defendants, any and/or all of them, as described above, rose to the level of negligent infliction of emotional distress making Defendants liable to Plaintiffs Jeremy Pope, G.T.P and A.M.P, pursuant to the tort of negligent infliction of emotional distress. As a direct and proximate result of the Defendants' negligence, gross negligence, carelessness, and/or recklessness, Mr. Adams died.

114.    As a direct and proximate result of the Defendants' negligence, gross negligence, carelessness, and/or recklessness, Mr. Adams' family members, loved ones, including Plaintiffs Jeremy Pope, G.T.P and A.M.P were inflicted with emotional distress as they watched Mr. Adams die.

115.    But for the Defendants' negligence, gross negligence, carelessness, and/or recklessness, Mr. Adams' family members, loved ones, and bystanders, including Plaintiffs Jeremy Pope, G.T.P and A.M.P would not have witnessed such a scene.

116.    As a direct and proximate result of the Defendants' negligence, gross negligence, carelessness, and/or recklessness, Mr. Adams' family members and loved ones, including Plaintiffs Jeremy Pope. and G.T.P and A.M.P suffered—and continue to suffer—severe emotional distress.

### COUNT VII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Defendant John Doe Tugboat Owners and John Doe Tugboat Operators 1-10

117.    The Plaintiffs incorporate by reference paragraphs 1-116 above, as if fully set forth herein.

118.    The Defendants were or should have been aware of the undertow and/or current created by the Tugboat while refueling.

119.    In refusing to render aid to Mr. Adams as he struggled to his death, Defendant's actions were atrocious, intolerable, and/or so extreme and outrageous as to exceed the bounds of decency.

120.    The Defendants acted intentionally or recklessly when it was certain or substantially certain that their refusal to render aid would cause the death of Mr. Adams and as a result, the Plaintiffs Jeremy Pope, G.T.P and A.M.P, to suffer emotional distress.

121.    In watching Mr. Adams as he suffered his death, the Plaintiffs Jeremy Pope, G.T.P., and A.M.P.  did and continue to suffer emotional distress so severe that no reasonable person could be expected to endure it.

### COUNT VIII - PUNITIVE DAMAGES
### ALL DEFENDANTS

122.    The Plaintiff incorporates by reference paragraphs 1-121 above, as if fully set forth herein.

123.    In the event that it is determined that the Defendants, collectively or individually, acted with a conscious, reckless, and outrageous indifference to the health, safety and welfare of others, the Plaintiff hereby asserts a claim for punitive damages against each Defendant to punish such Defendant for its misconduct and to deter others from following a like course.

**WHEREFORE,** the above-described conduct of the Defendants has directly and proximately caused injury and harm to the Plaintiff, he demands the following relief:

(a)     Compensatory damages for all economic losses and expenses incurred as a result of the death of Rusty Shane Adams;

21

(b)     General damages for all physical pain, mental suffering, and emotional distress suffered by Rusty Shane Adams from the time of beginning to drown until the time of his death;

(c)     Damages permitted to be recovered by the West Virginia Wrongful Death Act, including:

> i.   Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent;
>
> ii.  Compensation for reasonable expected loss of
>
> > 1.   Income of the Defendant, and
> >
> > 2.   Services, protection, care, and assistance provided by the Decedent; and
>
> iii. Reasonable funeral expenses and any other expenses incurred as a result of the death of Rusty Shane Adams;

(d)     Punitive damages to the fullest extent permitted by law;

(e)     Pre-judgment and post-judgment interest;

(f)     Costs incurred in this action and reasonable attorney fees;

(g)     Such other further specific and general relief as may become apparent from discovery as this matter matures for trial; and

(h)     For all past, present and future medical expenses, miscellaneous expenses, and all other recoverable special damages in a fair and just amount determined by the jury;

**THE PLAINTIFFS DEMAND A TRIAL BY JURY.**

**The Estate of R. Shane Adams,**

**By Counsel,**

**/s/ Ryan J. Umina Esq.**
Ryan J. Umina, Esq. (W.Va. Bar #13056)
Beth L. Umina, Esq. (W. Va. Bar #13009)
**UMINA LEGAL, PLLC**
133 Green Bag Road
Morgantown, WV 26505
Phone: (304) 838-8024
Fax:     (304) 715-3638
*Counsel for Plaintiff*

**/s/ J. Morgan Leach**
J. Morgan Leach, Esq. (W. Va. Bar # 13124)
Robert. J. Williamson Esq. (WV Bar #14329)
**J MORGAN LEACH, PLLC**
P.O. Box 5518, Vienna, WV 26105
(855) 444 - 5529 (call | text | fax)
morgan@jleach.law
rob@jleach.law
jleach.law
*Counsel for Plaintiff*

**/s/ James R. Leach**
James R. Leach, Esq. (W. Va. Bar #6923)
**JIM LEACH L.C.**
34 Bickel Mansion Drive
Parkersburg, WV 26101
304-865-8531
*Counsel for Plaintiff*

23