IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THE ESTATE OF R. SHANE ADAMS et al.,**

    **Plaintiffs,**

**v.**                                   **CIVIL ACTION NO. 1:24-CV-52**
                                                    **(KLEEH)**

**ZENITH ENERGY TERMINALS HOLDINGS, LLC et al.,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO AMEND ANSWER [ECF NO. 55]**

Pending before the Court is *Defendants Zenith Energy Terminals Holdings, LLC and Zenith Energy Logistics, LLC's Motion to Amend Answer and Affirmative Defenses* [ECF No. 55], which seeks to amend the Zenith Defendants' Answer to formally assert defenses under West Virginia's Economic Development Act of 1985's Rails to Trails Program, W. Va. Code § 5B-1A-1, <u>et seq.</u> (the "Rail Trail Act"). Plaintiffs oppose Defendants' motion to amend. ECF No. 56. For the reasons stated herein, Defendant's Motion [ECF No. 55] is **GRANTED.**

## I. RELEVANT PROCEDURAL HISTORY

On May 10, 2024, Plaintiffs, the Estate of R. Shane Adams, Jeremy Pope, G.T.P. and A.M.P. by next of friend, Jeremy Pope ("Plaintiffs"), filed suit against several entities alleging multiple claims relating to Mr. Adams death on May 13, 2022. ECF No. 1. Defendants Zenith Energy Terminals Holdings, LLC, and

Zenith Energy Logistics, LLC filed their Answer on August 28, 2024. The parties stipulated to the dismissal of several other Zenith entity defendants. ECF Nos. 26, 27. Thereafter, Plaintiffs moved pursuant to Rule 21 of the Federal Rules of Civil Procedure to drop "John Doe Tugboat Owner" and "John Doe Tugboat Operators 1-10" as parties. ECF No. 114. The Court granted the Rule 21 Motion. ECF No. 114. Accordingly, the only remaining Defendants are Zenith Energy Terminals Holdings, LLC, and Zenith Energy Logistics, LLC ("Zenith Defendants").

On June 13, 2025, the Zenith Defendants moved to amend their Answer to assert an additional affirmative defense under the Rail Trail Act. ECF No. 55. Plaintiffs filed their response in opposition on June 27, 2025 [ECF No. 56] and the Zenith Defendants replied in support of their motion to amend on July 7, 2025 [ECF No. 65]. The Court heard oral arguments on November 3, 2025. Accordingly, this Motion is fully briefed and ripe for review.

## II.   RELEVANT FACTUAL BACKGROUND

On May 13, 2022, Shane R. Adams visited the Edith Barill Riverfront Park in Star City, West Virginia with family. ECF No. 1, Compl. at ¶ 28. Adams and family were operating remote controlled boats on the Monongahela River. Id. at ¶ 30. When one of the remoted controlled boats stopped responding, Adams decided to swim to recover the boat. Id. at ¶¶ 36-38.

Ultimately, Adams drowned on the Monongahela River near a marine fuel transfer facility owned and operated by the Zenith Defendants.

There are three properties relevant to this action: (1) the Edith Barill Riverfront Park; (2) the West Virginia Rail Authority Property; and (3) the Zenith Energy Terminal. ECF No. 65 at p. 2. Plaintiffs' Complaint alleged that Adams entered the river from the Edith Barill Riverfront Park and that the Zenith Energy Terminal abutted the Park. Id. at p. 4, ¶ 39, ¶ 105. However, the Zenith Defendants contend that discovery and public records revealed that Adams entered the river from the West Virginia Rail Authority Property. ECF No. 55 at p. 2. Zenith Defendants contend these facts are significant because the Rail Trail Act affords certain defenses to owners of property that adjoins property owned by the Rail Authority. Id.

### III. LEGAL STANDARD

**A. Leave to Amend Under Rule 15**

Federal Rule of Civil Procedure 15 permits a party to amend an answer "once as a matter of course" within 21 days after serving the pleading. FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Federal Rule of Civil Procedure 8(c), a

3

defendant, in response to a pleading, must affirmatively state any affirmative defense. The Fourth Circuit has held that "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient ... as long as it gives plaintiff fair notice of the nature of the defense." Clem v. Corbeau, 98 Fed. Appx. 197, 203 (4th Cir. 2004).

The decision to grant or deny a motion to amend is within the discretion of the Court. See Scott v. Fam. Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013). Nonetheless, the Supreme Court of the United States has set forth factors for courts to consider when applying Rule 15(a)(2). See Foman v. Davis, 371 U.S. 178, 182 (1962); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Courts should grant leave to amend unless the amendment (1) "would be prejudicial to the opposing party," (2) "there has been bad faith on the part of the moving party," or (3) "the amendment would have been futile." Johnson, 785 F.2d at 509 (citing Foman, 371 U.S. at 182).

First, prejudice to the opposing party can result when a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party. Id. at 510. Often, a finding of prejudice applies when the amendment is offered "shortly before or during

trial." Id. (citing Roberts v. Ariz. Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981) (citations omitted)).

The second factor is whether the party seeking to amend is doing so in bad faith. Bad faith amendments are "abusive" or "made in order to secure some ulterior tactical advantage." GSS Props., Inc. v. Kendale Shopping Ctr., Inc., 119 F.R.D. 379, 381 (M.D.N.C. Mar. 15, 1988) (citing 6 C. Wright & Miller, Federal Practice and Procedure, § 1487 (updated Apr. 2015))). In assessing this factor, the court may consider the movant's delay in seeking the amendment but delay alone "is an insufficient reason to deny the plaintiff's motion to amend." Hart v. Hanover Cnty. Sch. Bd., No. 11-1619, 495 Fed. App'x 314 (4th Cir. 2012) (citations omitted).

The third factor weighs against granting leave to amend when amending the complaint would be futile. Johnson, 785 F.2d at 509-10. Even in the absence of prejudice and bad faith, a court should still deny leave to amend when the amended complaint would not survive a motion to dismiss, Perkins v. U.S., 55 F.3d 910, 917 (4th Cir. 1995), or "when the proposed amendment is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510.

**B.   Rule 16's Good Cause Standard**

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with

5

the judge's consent." Fed. R. Civ. P. 16(b)(4). Although leave to amend a complaint should be freely given when required under Rule 15(a), Rule 16(b)'s good cause standard must also be satisfied to justify leave to amend the pleadings after the deadlines provided by a scheduling order have passed. Nourison Rug Co. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); see also Smith v. United Parcel Serv., Inc., 902 F. Supp. 719, 721 (S.D.W. Va. 1995) ("Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a).").

> "Good cause" requires the party seeking relief to show that the deadlines cannot reasonably be met despite the party's diligence, and whatever other factors are also considered, the good-cause standard will not be satisfied if the district court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.

Cook v. Howard, 484 F. App'x 805, 815 (4th Cir. 2012) (quotation and alterations omitted). "Under Rule 16(b), good cause exists where the moving party has diligently made efforts to meet court imposed deadlines." Tawwaab v. Virginia Linen Serv., Inc., 729 F. Supp. 2d 757, 768 (D. Md. 2010) (citation omitted). "The factors to be considered in determining whether there is good cause or excusable neglect include the danger of prejudice to

6

the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." Id. at 768-69 (internal quotations and citation omitted).

## IV.   DISCUSSION

The Zenith Defendants seek leave to amend their Answer and assert the following affirmative defense:

> 14. Plaintiffs' claims are barred by West Virginia's Economic Development Act of 1985's Rails to Trails Program, W. Va. Code § 5B-1A-1, et seq.

ECF No. 55-1 at p. 25. They contend the proposed amendment to their Answer satisfies both Rule 15 and Rule 16 of the Federal Rules of Civil Procedure. ECF No. 55.

### A. Leave to Amend is Warranted Under Rule 15.

Regarding Rule 15, the Zenith Defendants argue that all three Foman factors support granting leave to amend. Id. at p. 6. First, amending the Answer to include the Rail Trail Act affirmative defense would not be prejudicial to Plaintiffs because the Zenith Defendants originally asserted a similar immunity defense under the West Virginia's Recreational Use Act, W. Va. Code § 19-25-1, et seq. ("Recreation Act"). Id. at pp. 6-7. Second, the Zenith Defendants contend they did not act in bad faith because Plaintiffs' Complaint and discovery responses claimed that the area abutting the Zenith Terminal was the Edith Barill Park, not Rail Authority property. Id. at p. 8. Zenith

7

Defendants argue they would have originally asserted the Rail Trail Act affirmative defense, but for Plaintiffs' incorrect factual assertions. Id. Further, they assert that the amendment is not made in bad faith because they alerted Plaintiffs of their intent to amend their Answer, shortly after discovering the correct owner of the land abutting the Zenith Terminal. Id. Third, the Zenith Defendants argue the amendment would not be futile because the application of the Rail Trail Act is dispositive of the action. Id.

In contrast, Plaintiffs argue the Foman factors are not satisfied. First, Plaintiffs assert that any amendments would be extremely prejudicial because the affirmative defense raises a new legal theory which would require additional fact gathering. ECF No. 56 at p. 7. Second, they contend the proposed amendments are not made in good faith because the Zenith Defendants filed their motion nearly a year after the responsive pleading deadline and on the eve of discovery closing. Id. Third, Plaintiffs contend the amendment would be futile because the Rail Trail Act is not applicable as the subject injuries were sustained on a navigable waterway — asserting the application of maritime law. Id. at pp. 8-9.

Here, the Court finds that the Foman factors support granting Zenith Defendants leave to amend their Answer. Plaintiffs' Complaint originally pled that the area abutting the

8

Zenith Terminal was the Edith Barill Park. Accordingly, Defendants originally asserted an affirmative defense under the Recreation Act, relying upon Plaintiffs' assertion that the land abutting the terminal was a recreational area. The Recreation Act provides in relevant part:

> an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational or wildlife propagation purposes, or to give any warning of a dangerous or hazardous condition, use, structure, or activity on such premises to persons entering for such purposes.

W. Va. Code § 19-25-2(a). However, as the Zenith Defendants discovered in April 2025, the land where Adams entered the Monongahela River is not part of Edith Barill Park and is instead owned by the Rail Authority. The Rail Trail Act, W. Va. Code § 5B-1A-9, provides:

> an owner or lessee who provides the public with land for use as a trail under this article or who owns land adjoining any trail developed under this article owes no duty of care to keep the land safe for entry or use by others for recreational purposes, or to give any warning to persons entering or going on the trail or adjoining land of a dangerous condition, use, structure or activity thereon.

W. Va. Code § 5B-1A-9(a). The Court agrees with the Zenith Defendants that the scope of protection and legal requirements under these two statutes are very similar. Each statute limits a landowner's duty of care and duty to warn. Both statutes

9

similarly preclude immunity from those charging for entry on to land and do not relieve liability for deliberate or malicious injuries. The only difference, obviously, is the land upon which the statutes apply.

The applicability of either statute does not necessitate additional factual discovery. Plaintiffs have known the location of the alleged injuries since filing suit, and the land ownership records were publicly available to Plaintiffs when preparing their Complaint. A view of public records, prior to filing suit, would have informed Plaintiffs of the correct landowner of the land where Adams entered the river. "To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint. A complaint containing allegations unsupported by any information obtained prior to filing violates the required prefiling factual investigation." Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991). Plaintiffs' argument that the Zenith Defendants' motion should be denied because these same records were equally available to them is unavailing.

Plaintiffs' argument does not account for the attorneys' obligations under Rule 11[1] and the fact that defendants should be

---

[1] "[A] complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions." In re Kunstler, 914 F.2d 505, 516 (4th Cir. 1990).

10

able to rely to some extent on the facts pled in the Complaint, at the pleading stage. Further, Plaintiffs affirmed in their discovery responses that the land abutting the terminal was owned by the Park. While the Court does not find sanctions necessary, Plaintiffs' apparent failure to undergo the minimal factual inquiry necessary to plead the correct owner of the land wherein Mr. Adams entered the water, supports allowing Defendants' amendment.

Finally, Plaintiffs argue the amendment would be futile because the Rail Trail Act is inapplicable, and federal maritime law governs this action. This is the first time Plaintiffs assert maritime law; the claims in the Complaint are pled under West Virginia State law. See ECF No. 1, Compl. Plaintiffs assert the Rail Trail Act does not apply because Adams' injuries or death did not occur on land. The applicability of the Rail Trail Act and the proposed amendment is not "clearly insufficient or frivolous on its face," when looking at the claims pled in Plaintiffs' Complaint. Johnson, 785 F.2d at 510. The Court will address the applicability of maritime law by separate order.

Ultimately, the Court finds that the Zenith Defendants' proposed amendment is not unduly prejudicial to Plaintiffs, is not made in bad faith, and is not clearly futile. Accordingly, the Zenith Defendants have satisfied Rule 15(a)(2).

**B. Good Cause Exists to Grant Leave to Amend the Answer After the Scheduling Order's Deadline.**

Per the Scheduling Order [ECF No. 19], the parties could amend the pleadings, under Rule 15, until October 14, 2024. Because the Scheduling Order's deadline passed, the Zenith Defendants must satisfy Rule 16(b)'s good cause standard to justify amending the pleadings after the deadline.

First, the Zenith Defendants assert good cause exists because they discovered the proper owner of the relevant property after the October 14, 2024 deadline. ECF No. 55 at p. 8. Second, they claim Plaintiffs are not prejudiced because they asserted a similar affirmative defense under the Recreation Act in their original Answer. Id. at pp. 8-9. Third, Zenith Defendants claim there was little delay between their discovery of the property's ownership and the filing of the instant motion. Id. at p. 9. Fourth, they did not assert the Rail Trail Act as an affirmative defense in the original pleading because Plaintiffs alleged in their Complaint and discovery that Adams entered the river from the Park, which abutted the Zenith Terminal. Id. And fifth, the Zenith Defendants state they acted in good faith by promptly informing Plaintiffs of their intent to assert the affirmative defense after discovering the subject property was not part of the Edith Barill Park, as pled by Plaintiffs. Id.

12

In opposition, Plaintiffs contend that the Zenith Defendants have not shown good cause for the untimely motion to amend because they could have determined the correct landowner by the original October 2024 deadline. ECF No. 56 at p. 5. Plaintiffs further assert the Zenith Defendants were not diligent in filing their motion to amend upon their discovery of the correct landowner. Id.

Here, the Court finds that the Zenith Defendants have made diligent efforts to comply with the Court's Scheduling Order. The Court notes that though the Zenith Defendants were afforded an extension to answer the Complaint, a purpose for the extension was to allow time for defense counsel to determine which of the original 17 Zenith entities were proper parties. ECF No. 6. As discussed above, the Court is not persuaded by Plaintiffs' claims that the Zenith Defendants were not diligent, when there are apparent concerns regarding the factual inquiry Plaintiffs undertook before filing their Complaint. Simply put, Plaintiffs cannot sincerely fault the Zenith Defendants for not discovering Plaintiffs' own factual inaccuracies quickly enough.

Furthermore, within two months of discovering the Rail Authority owned the property between the Zenith Terminal and the Park, the Zenith Defendants disclosed such information to Plaintiffs' counsel, informed Plaintiffs of their intent to amend their Answer and assert the Rail Trail Act affirmative

13

defense, and filed the subject motion. See ECF No. 55. As such, Plaintiffs had from May 19, 2025, to July 2, 2025, to complete any additional discovery they believed necessary regarding the property's ownership and were not unduly prejudiced.

Additionally, an affirmative defense can be raised for the first time during a motion to dismiss or motion for summary judgement. Grunley Walsh U.S., LLC, 386 Fed. Appx. 455 (holding that affirmative defenses raised for the first time in summary judgment motions may provide the required notice); Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999) (finding "there is ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion."); Coppola v. O'Brien, No. 3:15-CV-96, 2016 WL 4702441, at *3 (N.D.W. Va. Sept. 8, 2016), aff'd, 691 F. App'x 725 (4th Cir. 2017)(finding "the defense is not waived merely because the party asserting it failed to raise it in an initial responsive pleading").

Plaintiffs cannot thus be said to be unduly prejudiced by the Court allowing the Zenith Defendants to amend their Answer because Plaintiffs were put on notice of the potential Rail Trail Act affirmative defense in May 2025 and the Zenith Defendants would otherwise have been permitted to raise the defense in their dispositive motions.

Accordingly, upon consideration of each of the necessary factors, the Court finds good cause exists to justify the Zenith Defendants' delay in filing the subject motion.

## V.   CONCLUSION

For the reasons stated herein, *Defendants Zenith Energy Terminals Holdings, LLC and Zenith Energy Logistics, LLC's Motion to Amend Answer and Affirmative Defenses* [ECF No. 55], is **GRANTED**. The Court **DIRECTS** the Clerk of Court to **FILE SEPARATELY** Defendants' *Amended Answer and Affirmative Defenses of Defendants Zenith Energy Terminals Holdings, LLC and Zenith Energy Logistics, LLC*, attached as ECF No. 55-1.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

**DATED**: December 8, 2025

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA