IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THE ESTATE OF R. SHANE ADAMS et al.,

      Plaintiffs,

v.

                                    CIVIL ACTION NO. 1:24-CV-52
                                        (KLEEH)

ZENITH ENERGY TERMINALS HOLDINGS, LLC et al.,

      Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 73]

Pending before the Court is *Defendants Zenith Energy Terminals Holdings, LLC and Zenith Energy Logistics, LLC's Motion for Summary Judgment on Plaintiffs' State Law Claims* [ECF No. 73]. For the reasons discussed herein, the Motion [ECF No. 73] is **GRANTED**.

## I.    <u>RELEVANT PROCEDURAL HISTORY</u>

On May 10, 2024, Plaintiffs the Estate of R. Shane Adams, Jeremy Pope, G.T.P. and A.M.P. by next of friend, Jeremy Pope ("Plaintiffs") filed suit against several entities alleging multiple claims relating to Mr. Adams' death on May 13, 2022. Compl., ECF No. 1. Defendants Zenith Energy Terminals Holdings, LLC, and Zenith Energy Logistics, LLC filed their Answer on August 28, 2024. The parties stipulated to the dismissal of several other Zenith entity defendants. ECF Nos. 26, 27. Thereafter, Plaintiffs moved pursuant to Rule 21 of the Federal Rules of Civil Procedure

to drop "John Doe Tugboat Owner" and "John Doe Tugboat Operators 1-10" as parties. ECF No. 114. The Court granted the Rule 21 Motion. ECF No. 114. Accordingly, the only remaining Defendants are Zenith Energy Terminals Holdings, LLC, and Zenith Energy Logistics, LLC ("Zenith Defendants").

On June 13, 2025, the Zenith Defendants moved to amend their Answer to assert an additional affirmative defense under 1985's Rails to Trails Program, W. Va. Code § 5B-1A-1, et seq. (the "Rail Trail Act"). ECF No. 55. The Court granted the Zenith Defendants leave to amend their Answer. ECF No. 152.[1]

On July 21, 2025, Defendants filed *Defendants Zenith Energy Terminals Holdings, LLC and Zenith Energy Logistics, LLC's Motion for Summary Judgment on Plaintiffs' State Law Claims* [ECF No. 73], along with supporting memorandum. ECF No. 74. On August 11, 2025, Plaintiffs filed their response in opposition to Defendant's motion for summary judgment. ECF No. 87. Defendants filed their reply briefing on August 25, 2025. ECF No. 88-1. The Court heard oral arguments on November 3, 2025. Accordingly, this Motion is fully briefed and ripe for review.

---

[1] The Amended Answer is docketed at ECF No. 153.

## II.  RELEVANT FACTUAL BACKGROUND[2]

On May 13, 2022, Shane R. Adams ("Adams" or "Decedent") visited the Edith Barill Riverfront Park in Star City, West Virginia with family members including two minor children. ECF No. 86 at p. 2; ECF No. 74 at p. 1. Adams and family were operating remote controlled boats on the Monongahela River. ECF No. 86 at p. 2; ECF No. 74 at p. 7; see *Jeremy Pope Dep.*, ECF No. 73, Ex. 4 at pp. 11-12 and 24-25. When one of the remoted controlled boats stopped responding, Adams decided to swim to recover the boat. ECF No. 86 at p. 2; ECF No. 74 at p. 7; see ECF No. 73, Ex.4 at pp. 26, 35. Ultimately, Adams drowned on the Monongahela River near a marine fuel transfer facility owned and operated by the Zenith Defendants. ECF No. 86 at p. 2; ECF No. 74 at pp. 1, 8; see ECF No. 73, Ex. 9. Plaintiffs Jeremy Pope, G.T.P., and A.M.P. were present at the riverfront park at the time of Adams' death. *Jeremy Pope Dep.*, ECF No. 86-10, at pp. 35-36.

There are three properties relevant to this action: (1) the Edith Barill Riverfront Park; (2) the West Virginia Rail Authority Property; and (3) the Zenith Energy Terminal. ECF No. 74 at p. 3; ECF No. 73, Ex. 1. Adams entered the river from the West Virginia Rail Authority Property ("Rail Authority Property"), which abuts

---

[2] The Court only addresses the undisputed facts necessary for disposition of the case, pursuant to 1985's Rails to Trails Program, W. Va. Code § 5B-1A-1, et seq. (the "Rail Trail Act").

3

the Zenith Energy Terminal ("Terminal"). Id.[3]; ECF No. 86-10 at pp. 56-58. The river portion of the Terminal is comprised of two river cells and a walkway, which leads to where the fuel transfer equipment is located. See ECF No. 73, Exs. 1 and 2. The river cells are affixed to the riverbed, and one end of the walkway is welded to the southernmost river cell. *Tyler Martin Dep.*, ECF No. 73, Ex. 3 at pp. 81-82. The other end of the walkway is permanently connected to the Terminal's land. Id.

On May 13, 2022, a tug and barge were moored to the Terminal for a fuel transfer. See Id. at p. 30; ECF No. 86 at p. 2. Zenith Defendant employees completed the fuel transfer around 5:35 pm. See ECF No. 73, Ex. 3 at p. 30. A bystander called 911 to report the drowning at approximately 6:44 pm – over one hour after the fuel transfer was completed. Id. at p. 32.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

---

[3] As previously discussed and ruled upon in the Court's *Memorandum Opinion and Order Granting Motion to Amend Answer [ECF No. 55]* [ECF No. 152], the Court permitted the Zenith Defendants to amend their Answer to assert the Rail Trail Act affirmative defense, because Plaintiffs incorrectly pled that Adams entered the Monongahela River from Edith Barill Park.

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

## IV.  DISCUSSION

Plaintiffs' remaining claims are Count I – Wrongful Death; Count II/V[4] - Negligence; Count VI – Negligent Infliction of Emotional Distress; and Count VIII – Punitive Damages. ECF No. 1.

To succeed in a claim for negligence, a plaintiff must prove, by a preponderance of the evidence, that the defendant owed a duty, the defendant breached the duty owed, and the negligent breach was

---

[4] Plaintiffs' Complaint contains two Count V's. Count II alleges Negligence against all Defendants and the relevant Count V alleges Negligence against the Zenith Defendants. The Court will consider the negligence claims together.

the proximate cause of the injury. Wheeling Park Comm'n v. Dattoli, 787 S.E.2d 546, 551 (W. Va. 2016). "No action for negligence will lie without a duty broken." Syl. Pt. 1, in part, Parsley v. General Motors Acceptance Corp., 280 S.E.2d 703 (W. Va. 1981). Importantly, "[t]he determination of whether a defendant . . . owes a duty to the plaintiff is not a factual question for the jury; rather the determination . . . must be rendered by the court as a matter of law."  Syl. Pt. 5, Eastern Steel Constructors, Inc. v. City of Salem, 549 S.E.2d 266, 267-68 (W. Va. 2001) (citation omitted).

"To maintain an action for wrongful death, a beneficiary must show two specific elements: that a person has died, and that the death was caused by a wrongful act, neglect or default." Bradshaw v. Soulsby, 558 S.E.2d 681, 687 (W. Va. 2001). See W.Va. Code § 55-7-5. The Supreme Court of Appeals of West Virginia has interpreted W.Va. Code § 55-7-5 to mean:

> Under the express provisions of the wrongful death statute, in order to maintain an action for wrongful death there must be the death of a person and the death must be caused by such wrongful act, neglect or default as would, if death had not ensued, have entitled the party injured to maintain such action to recover damages for such wrongful death.

Baldwin v. Butcher, 184 S.E.2d 428, 432 (W. Va. 1971); Bradshaw, 558 S.E.2d at 687.

Likewise, "to prove negligent infliction of emotional distress, a plaintiff is required to show (1) that the defendant

6

engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that the defendant's negligent conduct was a cause of the serious emotional distress." Mowery v. Logan Cnty. Bd. of Educ., 2012 WL 895921, at *6 (S.D.W. Va. Mar. 15, 2012). "A claim for emotional distress without an accompanying physical injury can only be successfully maintained upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the claim is not spurious and upon a showing that the emotional distress is undoubtedly real and serious." Syl. Pt. 5, Barbina v. Curry, 650 S.E.2d 140, 143 (W. Va. 2007); Syl. Pt. 11, Marlin v. Bill Rich Construction, Inc., 482 S.E.2d 620 (W. Va. 1996). The Supreme Court of Appeals of West Virginia has stated that "cases will obviously be infrequent in which 'mental disturbance,' not so severe as to cause physical harm, will clearly be a serious wrong worthy of redress and sufficiently attested by the circumstances of the case." Barbina, 650 S.E.2d at 147 (quoting Ricottilli v. Summersville Mem'l Hosp., 425 S.E.2d 629, 635 (W. Va. 1992)).

Defendants argue each of Plaintiffs' claims fail as a matter of law for several reasons: (1) Defendants assert Plaintiffs failed to support the duty and causation elements of their claims; (2) Defendants argue they are statutorily relieved of any duty to warn under W. Va. Code § 55-7-28(a) and W. Va. Code § 5B-1A-9(a); and(3)

7

the negligent infliction of emotional distress claim fails as a matter of law. ECF No. 74.

Because each of Plaintiffs' claims' elements require evidence of negligent conduct, specifically a duty owed, and the Zenith Defendant's alleged defenses are applicable to multiple counts, the Court will consider the duty issue collectively.

A. **The Zenith Defendants Had No Duty to Warn Decedent Adams as a Matter of Law.**

The Zenith Defendants set forth multiple arguments to support why it owed no duty to warn Adams of dangerous conditions, uses, or activities occurring at its Terminal. The Zenith Defendants argue (1) Adams' decision to swim into the river to retrieve his RC boat was not foreseeable; (2) the hazards which caused Adams' death were open and obvious, pursuant to W. Va. Code § 55-7-28(a); and (3) the Rail Trail Act relieves Zenith Defendants of any duty to warn because the terminal abuts property owned by the West Virginia Rail Authority. ECF No. 74.

1. **The Rail Trail Act Relieves Zenith Defendants of liability for Injuries Resulting from Negligent Conduct.**

The Court finds, that even if *arguendo* Plaintiffs could create a triable issue of fact regarding their claims, the Zenith Defendants would still be entitled to summary judgment because the West Virginia Legislature immunized owners of land adjoining property owned by the West Virginia Rail Authority from liability,

excepting deliberate, willful or malicious injury to persons or property. § 5B-1A-9(e).

The Rail Trail Act, W. Va. Code § 5B-1A-9, provides in pertinent part:

> an owner or lessee who provides the public with land for use as a trail under this article or **who owns land adjoining any trail developed under this article owes no duty of care to keep the land safe for entry or use by others for recreational purposes**, or **to give any warning to persons entering or going on the trail or adjoining land of a dangerous condition, use, structure or activity thereon**.

W. Va. Code § 5B-1A-9(a) (emphasis added). The Rail Trail Act further limits liability, excepting deliberate, willful or malicious injury to persons or property, specifically to:

> (d) . . . an owner or lessee . . .who owns adjoining land to the trail under this article is not, by . . . owning land adjoining the trail:
>
> (1) Presumed to extend any assurance that the land is safe for any purpose;
>
> (2) Incur any duty of care toward a person who goes on that land; or
>
> (3) Become liable for any injury to persons or property caused by an act or an act of omission of a person who goes on that land.

§ 5B-1A-9(d).

The Zenith Defendants argue that W. Va. Code § 5B-1A-9 relieves them of any duty to warn about any dangerous conditions, uses or activities occurring at the terminal, including the barge

and moors because the land comprising the terminal adjoins land owned by the West Virginia Rail Authority. ECF No. 74 at p. 13. See Ex. 1, ECF No. 73-1. The Zenith Defendants contend that the conditions of their property include the barge near which Adams drowned because it was moored to two river cells which were attached to a gangplank that is permanently affixed to the Zenith Defendants' land. Id. Zenith Defendants rely upon a W. Va. DOT, Div. of Highway v. W. Pocahontas Props., Ltd. P'ship, in which the State Supreme Court defined "real estate" as

> the physical land and appurtenances affixed to the land—e.g., structures. Real estate is immobile and tangible ... [and] includes the following tangible components:
>
> - land
>
> - all things that are a natural part of land, such as trees and minerals
> - all things that are attached to land by people, such as buildings and site improvements
>
> In addition, all permanent building attachments (for example, plumbing, electrical wiring, and heating systems) as well as built-in items (such as cabinets and elevators) are usually considered part of the real estate. Real estate includes all attachments, both above and below the ground.

777 S.E.2d 619, 630 n.11 (W. Va. 2015). Thus, Zenith Defendants argue that their land includes the river cells, to which the barge and tug were moored. ECF No. 74 at p. 14.

10

In opposition, Plaintiffs argue that the Rail Trail Act only applies to injuries which are sustained on land and that is does not apply to drownings in navigable waters. ECF No. 87 at p. 6.[5] Further, Plaintiffs contend that the Zenith Defendants acted willfully, removing the immunity, and that the Zenith Defendants' interpretation of W. Va. Code § 5B-1A-9 would lead to absurd results. Id. at pp. 6-7.

Here, the Court finds that the Rail Trail Act applies to the Zenith Defendants' property and accordingly, they did not owe Adams any duty of care and are not liable for his death. First, there is no genuine dispute that the terminal abuts property owned by the West Virginia State Rail Authority. See ECF No. 73, Ex. 1. Though Plaintiffs' counsel argued at the motions' hearing regarding the accuracy of the map [ECF No. 73, Ex. 1], there is no actual evidence in the record to dispute that the terminal abuts property owned by the West Virginia Rail Trail Authority. Furthermore, public State records confirm and corroborate the Zenith Defendants' position on the respective land ownership, and the Court takes judicial notice of those public records pursuant to Federal Rule of Evidence 201.[6]

---

[5] The Court does not address Plaintiffs' arguments regarding the applicability of maritime law, which have already been disposed of by prior orders.

[6] The West Virginia Property Viewer, maintained in part by the West Virginia State Tax Department, reflects that the land owned by the Zenith Defendants in 2022 was adjoined to West Virginia State Rail Authority property. W. Va. St. Tax Dept., *West Virginia Property Viewer*, mapwv.gov,

Furthermore, Plaintiffs' argument regarding the location or type of injury at issue is unavailing and irrelevant to the statute's applicability because W. Va. Code § 5B-1A-9 relieves Zenith Defendants of the obligation to warn of dangerous conditions, uses, structures, or activities on their property. Plaintiffs have continually argued that Mr. Adams drowned as a result of a "deadly hazard created by the operation of [the Zenith Defendants'] business," [ECF No. 86 at p. 6] and that "the wrongful death of Mr. Adams result[ed] from his interaction with the moored barge at Zenith Defendants' facility." Id. at p. 11. Thus, Plaintiffs' claims clearly refer to a condition on the Zenith Defendants' property. The barge under which Mr. Adams drowned was moored to a fixture of the Zenith Defendants' property and thus falls within § 5B-1A-9's protection.

Plaintiffs additionally argue that the Rail Trail Act should not apply because Zenith Defendants acted willfully. This argument readily fails as all of Plaintiffs' claims lie in negligence and there are no claims of intentional or willful acts at issue.

Accordingly, The Zenith Defendants owed no duty to warn Adams of any dangerous conditions under W. Va. Code § 5B-1A-9 because the Terminal abuts property owned by the West Virginia State Rail Authority. Because duty is an essential element of a negligence

---

https://mapwv.gov/parcel/?pid=31-17-0003-0001-0000 (last visited March 20, 2026).

claim, Plaintiffs' Count II/V for Negligence fails as a matter of law. Furthermore, Count I – Wrongful Death and Count VI – Negligent Infliction of Emotional Distress each presuppose the existence of negligent conduct. Because Plaintiffs cannot succeed on the negligence claim, these claims additionally fail as a matter of law. As such, the application of the Rail Trail Act to the facts of this case is dispositive of this action in its entirety and the Court need not address the Zeniths Defendants' additional summary judgment arguments. Further, Plaintiffs are not entitled to punitive damages because each substantive claim against the Zenith Defendants fails as a matter of law.[7]

### V.    CONCLUSION

For the reasons stated herein, *Defendants Zenith Energy Terminals Holdings, LLC and Zenith Energy Logistics, LLC's Motion for Summary Judgment on Plaintiffs' State Law Claims* [ECF No. 73] is **GRANTED**. Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE**. Any remaining pending motions, deadlines, or hearings

---

[7] Count VIII for punitive damages is **DISMISSED WITH PREJUICE.** Plaintiffs' claim for punitive damages fails as a matter of law because "under West Virginia law, a separate cause of action for punitive damages does not exist." Slampak v. Nationwide Ins. Co. of Am., 2019 WL 3304814, at *4 (N.D.W. Va. July 23, 2019). See Cook v. Heck's Inc., 342 S.E.2d 453, 461 n.3 (W. Va. 1986); Miller v. Carelink Health Plans, Inc., 82 F. Supp. 2d 574, 579 n.6 (W. Va. 2000) ("West Virginia law does not recognize an independent cause of action for punitive damages."). A "claim for punitive damages also fails because punitive damages are a form of relief rather than an independent claim." Kerns v. Range Res.-Appalachia, LLC, 2011 WL 197908, at *7 (N.D.W. Va. Jan. 18, 2011).

are **TERMINATED.** This action is thus **STRICKEN** from the Court's active docket, and the Clerk is **DIRECTED** to enter judgment in favor of the Zenith Defendants.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  March 30, 2026

_Tom 8 Kleh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA